**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

TOMMY JAMES MILLSAP,   )
           )
   **Petitioner,**   )
           )
  **v.**       )   **Case No. CIV-16-103-RAW-KEW**
           )
JOE ALLBAUGH, Director,   )
           )
   **Respondent.**   )

## OPINION AND ORDER

This matter is before the court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. [Doc. 1]. Petitioner, a *pro se* prisoner in the custody of the Oklahoma Department of Corrections, is currently incarcerated at the Davis Correctional Facility in Holdenville, Oklahoma. Petitioner is attacking his conviction and sentence in Carter County District Court Case No. CF-2012-138 for Manslaughter in the First Degree, After Former Conviction of Two or More Felonies (Count 1), Felonious Possession of a Firearm, After Former Conviction of Two or More Felonies (Count 2), and Possession of a Controlled Dangerous Substance, After Former Conviction of Two or More Felonies (Count 3).[1] Petitioner sets forth the following grounds for relief:

 I. Petitioner had an absolute right to use lethal force to repel an unlawful intruder. Therefore, Petitioner should have been immune from prosecution and his conviction for manslaughter must be vacated and dismissed.

 II. The evidence was insufficient to support a conviction for manslaughter in the first degree by resisting criminal attempt because the evidence failed to prove beyond a reasonable doubt that Petitioner did not act in self-defense.

 III. Petitioner's conviction for possession of a controlled dangerous substance (methamphetamine) must be vacated because the evidence was insufficient to prove his guilt beyond a reasonable doubt.

---

[1] The State originally charged Petitioner with first degree murder. Upon the State's motion, the charge was amended to manslaughter in the first degree by resisting criminal attempt.

IV.    The evidence was insufficient to prove Petitioner was guilty of possession of a firearm after former felony conviction as the possession of the firearm was justified and should have been excused.

V.     Counts One and Three were improperly joined at Petitioner's trial in violation of his right to a fair trial and due process of law under the Fourteenth Amendment to the United States Constitution and Article II, Sections 7 and 20 of the Oklahoma Constitution.

VI.    Petitioner's rights to due process and a fair trial under the Fourteenth Amendment to the United States Constitution and Article II, Sections 7 and 20 of the Oklahoma Constitution were violated by the improper admission of bad character evidence.

VII.   The failure to provide a complete record of the proceedings constitutes a violation of Petitioner's rights under the Fourteenth Amendment to the United States Constitution and Article II, Sections 7 and 20 of the Oklahoma Constitution.

VIII.  The trial court abused its discretion in allowing the State to allege and to present evidence of separate prior convictions on cases and counts that arose out of the same transactions, or occurrence or series of events closely related in time and location.

IX.    Petitioner was deprived of the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Sections 7 and 20 of the Oklahoma Constitution.

X.     Petitioner's sentences are excessive and should be modified.

XI.    The accumulation of error violated Petitioner's rights under the Fourteenth Amendment to the United States Constitution and Article II, Section 7 of the Oklahoma Constitution.

Respondent filed a response on May 12, 2017. [Doc. 20]. Respondent concedes that Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. [*Id*. at 2]. The eleven grounds for relief asserted by Petitioner herein were also presented to the

Oklahoma Court of Criminal Appeals ("OCCA").  [*Id.* at 3].  The following have been submitted to the court for consideration in this matter:

A.    Petitioner's direct appeal brief.

B.    State's brief in Petitioner's direct appeal.

C.    Summary Opinion affirming Petitioner's judgment and sentence.

D.    Transcripts of preliminary hearing and jury trial proceedings.

E.    DVD of interview of Petitioner.

F.    Motion to dismiss filed in state court, and the minute order of 09/26/2012 showing motion to dismiss withdrawn.

G.    Relevant jury instructions.

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As a preliminary matter, Petitioner has included claims specifically based upon the Oklahoma Constitution within Grounds V, VI, VII, IX and XI.  Those portions of Petitioner's claims are denied.  Claims grounded in a state's constitution are not cognizable on federal habeas corpus review.  The Supreme Court has explained "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991).  *See also Davis v. Reynolds,*

890 F.2d 1105, 1109 n. 3 (10th Cir.1989) ("Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)." (citation omitted)).

## Factual Background

The OCCA set forth the facts of the case as follows:

On February 27, 2012, members of the Carter County Sheriff's Office and Ardmore Police Department executed a search warrant on Millsap's home at 86 Clover Lane. Millsap was not present at the time. The structure was a two bedroom residence; one bedroom contained adult male clothing and the other contained small children's clothes. In the closet of the children's bedroom, officers found a lockbox containing prescription pill bottles bearing Millsap's name. Also in the lockbox were cystalline flakes that were tested to be methamphetamine. In the master bedroom, an OG&E bill dated January 2012 and bearing Millsap's name for 86 Clover Lane was found on the dresser.

On March 28, 2012, a group of people congregated at Millsap's home at 86 Clover Lane. Among those present were Toby Albin, the victim and long-time friend of Millsap, Susie Gorman, Taylor Burkett, and Karlie Barbour. The group drank and used drugs into the night. At one point, Millsap allowed Albin to use his vehicle to drive to Texas to get some money from Albin's father. On Albin's return, Millsap allowed Albin and Barbour to spend the night at his home while he spent the night at Burkett's apartment.

On the morning of March 29, 2012, Millsap and Burkett went to a store called 580-To Go where they traded Albin's iPhone for another phone. Millsap used methamphetamine that morning and appeared to be under the influence at the time. When they returned to Millsap's house, Albin was angry because his phone, money, and some drugs were missing. Although not directed at anyone in particular, Albin threatened to "take care" of anyone who was involved with taking his property.

Albin received information that his phone was at 580-To Go. Driving Millsap's car, Albin and Burkett picked up Gorman and the three went to the store to try to locate the phone. At the store, Albin identified his phone and store employees pointed to Burkett and advised that she and a man had traded it that morning. Albin told Gorman that he wanted to talk to Millsap before confronting anyone about taking his phone. Although flatly disputed by Gorman, Burkett testified that before returning to Millsap's house, Albin stopped at another house where he asked someone if they had a gun; at that time, Burkett called Millsap to warn him that Albin was trying to obtain a weapon.

When the call came in from Burkett, Millsap "started freaking out" and told Barbour that Albin was upset about his missing property. Millsap sent his children to his mother's house next door and returned with a gun. Barbour asked why he needed the gun to which Millsap responded, "In case something gets out of hand."

Millsap was standing outside with the shotgun when Albin pulled up to the house. Albin got out of the car and stated that he was not armed. Albin asked if the gun was for him and Millsap responded that it was not. The two men talked; at times the conversation got heated but would calm back down. During the conversation, Albin repeatedly tried to convince Millsap to go with him to confront Keith Dean, a man who was at the party the night before and whom Albin suspected of stealing his property. Albin remarked that he was not leaving until Millsap came with him to find Dean. As they talked, both Albin and Millsap moved in and out of the house. At one point they got into the car to go confront Dean but never left. As they talked by the car, Barbour saw a phone between the seat and armrest. She reached to get the phone and Albin held her by the hair, brandished a knife, laughed, and winked at her. Barbour explained that Albin was simply trying to get Millsap's attention and that she never felt threatened.

Millsap told Albin to come inside the house to talk. Millsap went into the house, sat down in the living room, and propped the shotgun up on his leg. Burkett followed and sat beside him. Before Albin went inside, Gorman said something to him which prompted him to say "Oh hell no." Albin went into the house with Barbour following a few steps behind. As he entered, Albin accused Millsap of taking his property. Millsap fired one shot striking Albin in the stomach. From the time Albin entered until the time he was shot, only a matter of seconds passed. Millsap hid the shotgun in a wooded area until police arrived. No weapons were found on or near Albin. The knife the victim brandished earlier was found outside near the car.

In a Mirandized interview given on March 30, 2012, Millsap told Detective Rick Batt of the Carter County Sheriffs Office, that he shot Albin out of panic and fear. He stated that he feared Albin would "jump him" and, because of prior back and shoulder injuries, he would not be able to adequately defend himself. However, Millsap explained that it was his understanding that under the "Make My Day" law he had to shoot Albin inside his home in order for it to be legal; it was his belief that if the shooting occurred outside, it would be illegal. So, according to Millsap, he went inside, sat down in the living room, positioned the weapon on his leg pointing in the direction of the hallway, and waited for Albin to come down the hall. Millsap admitted that he never saw Albin with a gun or anything in his hands when Albin entered the house. Millsap further described the manner in which Albin entered the house as walking "kind of fast" and demonstrated Albin's gait for Detective Batt.

*Millsap v. State*, No. F-2012-1107, slip op. at 3-6 (Okla. Crim. App. Feb. 26, 2014) (unpublished).

[Doc. 20-3]. The OCCA's factual findings are entitled to a presumption of correctness, unless

Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

**Ground I:      "Stand Your Ground" statute**

Petitioner claims in Ground I that he "had an absolute right to use lethal force to repel an unlawful intruder" and that he "should have been immune from prosecution and his conviction for manslaughter must be vacated and dismissed." [Doc. 1 at 7]. Relying upon the language found within Okla. Stat. tit. 21, § 1289.25 (2011), Oklahoma's "Stand Your Ground" statute, Petitioner makes a general claim that citizens of the State of Oklahoma "have a right to expect absolute safty [sic] within their own homes." [*Id.*]. Petitioner then sets forth his argument that Mr. Albin was not an invited guest at the time of the shooting, claiming "when Mr. Albin the deceased got into the driver's seat to leave[,] the previous invite into the home was over," that Mr. Albin "rushed into the house" in a threatening manner, that Mr. Albin "rushed toward [Petitioner] who was sitting in a chair in his own home" and that Mr. Albin was reaching into his pocket "as if to pull out a weapon." [*Id.*]. Petitioner admits that he "fired one time striking Mr. Albin in the stomach" but asserts he is entitled to a full and complete defense under § 1289.25. [*Id.*].

In response, Respondent contends "this claim involves the application of a state statute enacted by the state Legislature, which interpretation must be left to the highest court, the OCCA" and that "[t]he OCCA reviewed the merits of Petitioner's claim and determined § 1289.25 was inapplicable to Petitioner." [Doc. 20 at 11-12]. Respondent also claims the trial "was not fundamentally unfair, and this state law issue is not cognizable on habeas review." [*Id.* at 12]. Respondent argues that "the OCCA's determination of this claim was not contrary to, or an unreasonable application, of Supreme Court law, and the decision was not based on an unreasonable determination of the facts presented at trial." [*Id.*].

The OCCA addressed the claim on the merits:

In Proposition I, Millsap argues that he was immune from prosecution and the charges should have been dismissed pursuant to the Stand Your Ground Law codified at Section 1289.25 of Title 21. He further argues that the trial court erred in failing to *sua sponte* instruct the jury under this statute as a theory of defense.

6

Millsap concedes that a motion to dismiss the charge based upon Section 1289.25 was filed, but later withdrawn by counsel. He further concedes that defense counsel did not request that the jury be instructed on Section 1289.25 as a theory of defense. He has, therefore, waived all but plain error on these claims. *Barnard v. State*, 2012 OK CR 15, ¶ 13, 290 P.3d 759, 764 (failure to object to jury instructions waives all but plain error); *Nealy v. State*, 1981 OK CR 142, ¶ 4, 636 P.2d 378, 380 (failure to file a demurrer or motion to quash waives any defect in the Information except as it goes to jurisdiction). Plain error is an actual error, that was plain or obvious, that affects a defendant's substantial rights and the outcome of the trial. *Barnard*, 2012 OK CR 15, ¶ 13, 290 P.3d at 764.

Millsap's arguments are plagued by error in their underlying premise that his shooting of Albin was justified under Section 1289.25. Under this provision, a person is justified in using deadly force to defend against the unlawful and forcible entry into a home or business by another. 21 O.S.2011, § 1289.25(B)(1). The evidence here shows that Albin was not unlawfully and forcibly entering Millsap's home at the time he was shot; rather, he was invited to enter. Testimony from both State and defense witnesses established that just prior to the shooting, Millsap and Albin were moving in and out of the house repeatedly as the discussions were occurring about Albin's missing property. Although loud and heated, the discussions were not an argument between the two men but rather revolved around Albin and Millsap going together to confront a third party who was initially suspected of taking the property. More significantly, just before Albin entered the home for the last time, Gorman heard Millsap expressly tell Albin to come inside to continue those discussions. Regardless of whatever weight might be given to the fact that Albin was an invited guest from the night before, the events preceding the shooting show that he was still an invited guest and was not unlawfully and forcibly entering the home when Millsap shot and killed him. Under these circumstances, Section 1289.25(B)(1) has no application.

Turning to each of Millsap's arguments presented in his first assignment of error, there was no plain error. The decision of what charge to bring against a defendant, if any, rests within the discretion of the prosecutor so long as there is probable cause to believe that a crime has been committed. *Woodward v. Morrissey*, 1999 OK CR 43, ¶ 9, 991 P.2d 1042, 1045. While Section 1289.25 prohibits the criminal prosecution of an individual who has used deadly force which is justified under the Act, 21 O.S. 2011, § 1289.25(F), the facts of the present case establish that Millsap did not fall within the scope of this immunity. Also untenable is Millsap's claim that the trial court erred in failing to instruct the jury pursuant to Section 1289.25. While it is the duty of the trial court to instruct the jury on the salient features of the law raised by the evidence presented, including any theory of defense, there was no plain error in the trial court's failure to instruct the jury of the law in this regard because Albin was not unlawfully and forcibly entering the home when Millsap shot and killed him. *Atterberry v. State*, 1986 OK CR 186, ¶ 8, 731 P.2d 420, 422. Proposition I is denied.

*Millsap*, slip op. at 6-8.

In short, the OCCA held that Petitioner was not immune from prosecution because he was not justified in shooting Mr. Albin. Petitioner disagrees, claiming immunity from prosecution and that his attorney should have pursued this theory of defense, but the OCCA's ruling on this issue was not unreasonable. Ample evidence showed Mr. Albin was not unlawfully and forcibly entering the home at the time of the shooting. Witnesses for the State and the defense testified that Petitioner and Mr. Albin had been moving in and out of the house repeatedly during the discussions about Mr. Albin's missing property, and in fact, one witness testified that "[Petitioner] told [Mr. Albin] to come in the house to talk" just before the shooting took place. [Doc. 21-2 at 134].

The OCCA also concluded there was no plain error in the trial court's failure to instruct the jury regarding § 1289.25, and " '[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.' " *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005) (quoting *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997), *cert. denied*, 547 U.S. 1166 (2006)). Further, " '[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.' " *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). Petitioner has not shown that the omission of the jury instruction regarding § 1289.25 deprived Petitioner of a fair trial and to due process of law.

The court finds the OCCA's determination of this claim was not contrary to, or an unreasonable application, of Supreme Court law. The court also finds the OCCA's decision was not based on an unreasonable determination of the facts presented at trial. Ground I lacks merit and the court denies habeas relief.

**Ground II:    The evidence was insufficient to support a conviction for manslaughter in the first degree by resisting criminal attempt because the evidence failed to prove beyond a reasonable doubt that Petitioner did not act in self-defense;**

**and,**

**Ground III: Petitioner's conviction for possession of a controlled dangerous substance (methamphetamine) must be vacated because the evidence was insufficient to prove his guilt beyond a reasonable doubt.**

In Grounds II and III, Petitioner claims there was insufficient evidence to sustain two of his convictions. Petitioner contends in Ground II that the evidence was insufficient to support a conviction for manslaughter in the first degree by resisting criminal attempt in violation of Okla. Stat. tit. 21, § 711(3) (2011), arguing that the evidence failed to prove beyond a reasonable doubt that Petitioner did not act in self-defense. [Doc. 1 at 9]. In Ground III, Petitioner contends the evidence was insufficient to support his conviction for possession of a controlled dangerous substance (methamphetamine) in violation of Okla. Stat. tit. 63, § 2-402 (2011), specifically claiming the home had temporarily been rented to another individual named "Ricky Marshall" before the search warrant was executed. [*Id.* at 10].

Respondent contends the OCCA's decision regarding Grounds II and III was neither contrary to, nor based on an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts. [*Id.* at 18-19, 22]. Respondent primarily refers to the trial transcript and DVD of Petitioner's interview to undermine the claims raised in Petitioner's Ground II, asserting as follows:

> The jury relied on the evidence presented at trial which showed that when Mr. Albin arrived at Petitioner's house and saw Petitioner outside with a shotgun, Mr. Albin held his hands in the air, told Petitioner he was not carrying anything, and he just wanted to talk (Exhibit 4, 133). Before he would even exit the car, Mr. Albin asked Petitioner if the gun was for him (Exhibit 4, 155-56, 216; Exhibit 5 at 8:20). Instead of warning Mr. Albin that the gun was for him and he needed to leave, actions that a reasonable person in fear would take, Petitioner told him to "chill out" and assured him the gun was not for him (Exhibit 4, 155-56, 216; Exhibit 5 at 8:20).
>
> Petitioner then told Mr. Albin "to come in the house and talk (Exhibit 4, 134), which is also contrary to what a reasonable person would do if they were in fear of great bodily harm or death. By Petitioner's own words, Petitioner went inside not to seek refuge from Mr. Albin, but so his shooting of Mr. Albin would be "legit" under Oklahoma's "Make My Day" law (Exhibit 4, 215-216; Exhibit 5, at 7:58-7:45, 37:43-37:58). A reasonable person would do everything in his power to erect any kind of barrier between himself and the person he felt was about to inflict great bodily harm or kill him, and not specifically invite the potential assailant inside.

Had Petitioner truly been afraid of Mr. Albin, he would have told Mr. Albin to leave and locked him out of the house, and not leave the door open and invite him inside so that it would be "legit" when he shot him.

\* \* \*

In the present case, when Mr. Albin came inside the final time, Petitioner did not see anything in Mr. Albin's hands, but shot him anyway, claiming he was afraid that Mr. Albin might jump on him and he was unable to fight due to prior injuries (Exhibit 4, 217, 222; Exhibit 5 at 8:38-9:02, 9:12, 32:51-33:14). However, no witness testified that they heard a verbal warning from Petitioner, or any statement that could be construed as Petitioner telling Mr. Albin to leave the premises or not to come inside his house.

[Doc. 20 at 17-18]. Next, regarding Petitioner's claims in Ground III, Respondent provided the following response:

"To determine whether there was sufficient evidence presented at trial to sustain Petitioner's conviction, the court first must look to Oklahoma law for the elements required for the crime." *Torres v. Mullin*, 317 F.3d1145, 1152 (10th Cir. 2003). To prove Petitioner guilty of possession of a controlled dangerous substance, the prosecution had to prove that Petitioner knowingly and intentionally possessed the methamphetamine. Okla. Stat. tit. 63, § 2-402 (2011). Further, in Oklahoma, "possession may be either actual or constructive, and need not be exclusive as long as there is proof that [petitioner] knowingly and willfully shared the right to control the dangerous substance." *White v. State*, 900 P.2d 982, 986 (Okla. Crim. App. 1995) (internal citation and quotation omitted). "Constructive possession can be established through circumstantial evidence proving [petitioner] knows of the presence of drugs . . . and has the power and intent to control their disposition or use." *Hill v. State*, 898 P.2d 155, 166 (Okla. Crim. App. 1995). "A defendant's knowledge and intent can be proved by circumstantial evidence. *Id*. Although Petitioner was not present during the search of his home, the prosecution presented numerous other factors showing he knew of the presence of the methamphetamine and had the power and intent to control its use. *Hill*, 898 P.2d at 166.

Ardmore Police Sergeant Keith Ingle assisted in the execution of a search warrant at Petitioner's residence on February 27, 2012 (Exhibit 4, 112-113). Nobody was home during the search (Exhibit 4, 118). In a middle bedroom, which appeared to be the children's bedroom, Sergeant Ingle found a gray lockbox, in the bottom of which was a blue crystal-like substance which field-tested positive for methamphetamine (Exhibit 4, 114). The substance was later analyzed in a laboratory and found to be methamphetamine (Exhibit 4, 125).

In a dresser in the master bedroom of Petitioner's home, Sergeant Ingle found an Oklahoma Gas and Electric (OG&E) bill for the previous month with Petitioner's

name and the address that was being searched (Exhibit 4, 114-115). In addition, the box in which the methamphetamine was found had Petitioner's initials written on it, specifically "Tara [loves] TJM," and contained several prescription pill bottles with Petitioner's name on them (Exhibit 4, 114-116). These factors show Petitioner knew of the presence of the methamphetamine in his residence, and had the power and intent to control its use. *Hill*, 898 P.2d at 166.

The evidence presented at trial supports a rational inference that the place where the methamphetamine was found was Petitioner's residence and that he exercised dominion and control over his residence including the box in which the methamphetamine was found.

[Doc. 20 at 20-22].

The OCCA analyzed and denied relief on Petitioner's claims as follows:

In Propositions II and III Millsap challenges the sufficiency of the evidence to support each of his convictions for Manslaughter in the First Degree and Possession of a Controlled Dangerous Substance. Reviewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found each of the elements of the crimes charged beyond a reasonable doubt and further found that Millsap was not acting in self-defense. *Easlick v. State*, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559. Propositions II and III are denied.

*Millsap*, slip op. at 8.

In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The Supreme Court repeatedly has emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than

raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)), *cert. denied*, 498 U.S. 904 (1990).

> Sufficiency of the evidence is a mixed question of law and fact. We ask whether the facts are correct and whether the law was properly applied to the facts, which is why we apply both 28 U.S.C. § 2254(d)(1) and (d)(2) when reviewing sufficiency of the evidence on habeas.

*Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006) (citations omitted*), cert. denied*, 549 U.S. 1285 (2007).

> In federal habeas proceedings, where a sufficiency challenge was resolved on the merits by the state courts, we have held that AEDPA "adds an additional degree of deference," and the question becomes whether "the OCCA's conclusion that the evidence was sufficient constituted an unreasonable application of the *Jackson* standard." *Diestel v. Hines,* 506 F.3d 1249, 1267 (10th Cir.2007) (quoting *Patton v. Mullin,* 425 F.3d 788, 796 (10th Cir.2005)) (internal quotation marks omitted); *see Coleman v. Johnson,* —— U.S. ——, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012) (per curiam). We call this standard of review "deference squared." *Young v. Sirmons,* 486 F.3d 655, 666 n. 3 (10th Cir.2007) (quoting *Torres v. Lytle,* 461 F.3d 1303, 1313 (10th Cir.2006)) (internal quotation marks omitted).

*Hooks v. Workman*, 689 F.3d 1148, 1166 (10th Cir. 2012).

"Even if a state court resolves a claim in a summary fashion with little or no reasoning, [the habeas court] owe[s] deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). A state court's summary disposition must be upheld unless a federal habeas court is persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law." *Id.* (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

To determine whether there was sufficient evidence presented at trial to sustain Petitioner's conviction, the court first must look to Oklahoma law for the elements required for the crime. *Jackson*, 443 U.S. at 324 n.16; *see also Torres v. Mullin*, 317 F.3d 1145, 1152 (10th Cir.), *cert. denied*, 540 U.S. 1035 (2003).

Petitioner was convicted of manslaughter in the first degree by resisting criminal attempt. See Okla. Stat. tit. 21, § 711(3) (2011). The OCCA has described manslaughter in the first degree by resisting criminal attempt as follows:

> Manslaughter by resisting criminal attempt is committed when a homicide is "perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed." 21 O.S.2001, § 711(3). The term "unnecessarily" as used in the statute is equivalent to "unlawfully" or "without legal justification." *See Committee Comments* to OUJI–CR (2d) 4–102. "An 'unnecessary' killing constituting first-degree manslaughter would thus be found under circumstances where the defendant did not initiate the difficulty, yet honestly but unreasonably believed either that he is in danger of injury, or that slaying is the only way to prevent injury." *Id.*

*Davis v. State*, 268 P.3d 86, 116 (Okla. Crim. App. 2011).

The undersigned notes OUJI-CR 4-102 was referenced in the trial transcript. [Doc. 21-3 at 34]. Other important jury instructions, such as OUJI-CR 8-46 and OUJI-CR 8-49, were also provided to the jury. Self-defense is described in OUJI-CR 8-46 as follows:

> A person is justified in using deadly force in self-defense if that person reasonably believed that use of deadly force was necessary to protect himself from imminent danger of death or great bodily harm. Self-defense is a defense although the danger to life or personal security may not have been real, if a reasonable person, in the circumstances and from the viewpoint of the defendant, would reasonably have believed that he was in imminent danger of death or great bodily harm.

[Doc. 20-8 at 1]. Moreover, OUJI-CR 8-49 explained "[i]t is the burden of the State to prove beyond a reasonable doubt that the defendant was not acting in self-defense. If you find that the State has failed to sustain that burden, then the defendant must be found not guilty." [*Id.* at 2]. OUJI-CR 8-56, also referenced by the trial court, defined "imminent danger" as "[d]anger that is pressing, urgent or immediate." [*Id.* at 3.].

Petitioner argues that the evidence was insufficient to support a conviction for manslaughter in the first degree because the evidence failed to prove beyond a reasonable doubt that Petitioner did not act in self-defense. The jury, however, was properly instructed on the elements of manslaughter and self-defense, and sufficient evidence supported the conviction. The

evidence showed Petitioner was standing outside his house with a shotgun when Mr. Albin arrived. Mr. Albin stated that he was not armed. Mr. Albin asked if the gun was for him and Petitioner responded that it was not. The two men talked, moving in and out of Petitioner's house. The conversation would get heated at times. But at no point did Petitioner lock the door or take steps to prevent Mr. Albin from entering the residence. Mr. Albin was not directed to leave. Instead, prior to the shooting, Petitioner specifically told Mr. Albin to come inside the house to talk. Petitioner went into the house, sat down in the living room, and propped the shotgun up on his leg. Mr. Albin entered the residence and accused Petitioner of taking his property, and without warning, Petitioner fired one shot striking Mr. Albin in the stomach. No weapons were found on or near Mr. Albin. Under the circumstances, a rational jury could have found beyond a reasonable doubt that the killing of Mr. Albin was unnecessary and that Petitioner had not acted in self-defense.

Petitioner was also convicted of unlawful possession of a controlled dangerous substance (methamphetamine) in violation of Okla. Stat. tit. 63, § 2-402 (2011). A conviction for possession of a controlled dangerous substance must be supported with proof beyond a reasonable doubt that Petitioner: (1) knowingly and intentionally, (2) possessed, (3) a controlled dangerous substance. *See* Okla. Stat. tit. 63, § 2-402(A); *see also* OUJI-CR 6-6. The jury heard the evidence and was properly instructed on the elements of unlawful possession of a controlled dangerous substance. Petitioner muddies the water, claiming his home had temporarily been rented to another individual named Ricky Marshall before the search warrant was executed. Be that as it may, an OG&E utility bill for the previous month was found in Petitioner's home at the time of the search. [Doc. 21-2 at 114-115]. The OG&E bill had Petitioner's name on it as well as the address that was being searched. [*Id.*]. The box containing methamphetamine was located in a middle bedroom (which appeared to be the children's bedroom) in the Petitioner's home, and of particular importance, the box had Petitioner's initials written on it and contained several prescription pill bottles with Petitioner's name on them. [*Id.*]. A rational jury could have found Petitioner knowingly and intentionally possessed methamphetamine beyond a reasonable doubt.

The Petitioner raised the claims asserted in Grounds II and III on direct appeal to the OCCA. The OCCA rejected the claims on the merits. This court should not "second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). The OCCA's

determination of each claim was not contrary to, or an unreasonable application, of Supreme Court law, and its decision was not based on an unreasonable determination of the facts presented at trial. Grounds II and III for habeas corpus relief fail.

**Ground IV:  The evidence was insufficient to prove Petitioner was guilty of possession of a firearm after former felony conviction as the possession of the firearm was justified and should have been excused.**

In Ground IV, Petitioner relies heavily upon *Lynn v. State*, F-2003-1136 (Okla. Crim. App. Nov. 9, 2004), claiming the possession of the shotgun, even after a former felony conviction, was justified and should have been excused.  [Doc. 1 at 12].  Petitioner essentially argues that self-defense is a defense to the charge of felonious possession of a firearm.

In response, Respondent explains that Petitioner raised the defense of self-defense to the manslaughter charge, that the jury was properly instructed on his defense, that the jury rejected the defense, and that Petitioner was found guilty of manslaughter.  [Doc. 20 at 25].  Additionally, Respondent claims that "[d]uring the second stage of Petitioner's trial, defense counsel did not argue that possession of the shotgun was justified, but rather, conceded guilt and begged the jury for leniency."  [*Id*.].  Respondent further claims that "even absent Petitioner's confession to the crime, the evidence was sufficient to sustain his conviction as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  [*Id*. at 26].  Respondent argues that Petitioner did not challenge his prior convictions, and that the evidence sufficiently established that Petitioner was carrying around a shotgun on the day of the shooting.

The OCCA rejected Petitioner's claim:

> Although cast as a challenge to the sufficiency of the evidence, Millsap's Proposition IV does not challenge the sufficiency of the State's evidence to prove each of the elements to support a conviction for Possession of a Firearm After Former Conviction of a Felony.  Rather, Millsap argues he was justified in possessing the shotgun out of self-defense.  He further claims error on the part of the trial court in failing to instruct the jury on this theory of defense.  Millsap

acknowledges he did not request that the jury be instructed on self-defense as to this charge. We review only for plain error. *Barnard*, 2012 OK CR 15, ¶ 13, 290 P.3d at 764. In support of his claims, Millsap relies on an unpublished opinion in *Lynn v. State*, F-2003-1136 (November 9, 2004). Looking to the language of the Oklahoma Firearms Act which stated a broad public policy of controlling the use of firearms "without unnecessarily denying their lawful use in defense of life," in *Lynn* we concluded that the Legislature did not intend to deprive a convicted felon of the right to use a firearm in self-defense under limited circumstances. Thus, we concluded that there may be circumstances in which justification could be a defense to a charge of felonious possession of a firearm. While basing his claim upon *Lynn*, Millsap does not address the question of its viability as persuasive authority in light of our decision in *Dawkins v. State*, 2011 OK CR 1, 252 P.3d at 214. The State responds only that *Lynn* is persuasive and urges us to follow our decision in *Lancaster v. State*, 1975 OK CR 205, 541 P.2d at 1343. We need not determine what, if any, weight to give to *Lynn*, because the question of whether self-defense is a defense to the charge of felonious possession of a firearm is purely academic in this case.

The record reflects that the trial proceedings were conducted in two stages. The determination of guilt or innocence on the charges of Manslaughter in the First Degree and Possession of a Controlled Dangerous Substance was made in the first stage. When the jury rejected his defense of self-defense by returning a verdict of guilty on the charge of Manslaughter in the First Degree, Millsap made no argument that his possession of the shotgun was legally justified. Instead, he admitted his guilt of this offense and pled for leniency from the jury on punishment for each of the crimes. It is this concession that now controls the resolution of Millsap's claims. We have recognized that where a defendant or his counsel makes admissions during trial that render every defense unavailable save one, the defendant is deemed to have elected that defense. *Grissom v. State*, 2011 OK CR 3, ¶ 35, 253 P.3d 969, 982. Because he conceded guilt to this charge, he rendered every defense unavailable including that of justification. There was neither plain error in the trial court failing to *sua sponte* instruct the jury on a theory of defense completely foreclosed by Millsap's defense nor can he raise a new theory of defense on appeal under the guise of a challenge to the sufficiency of the evidence. Proposition IV is denied.

*Millsap*, slip op. at 8-10 (footnote omitted).

The OCCA concluded the unpublished *Lynn* decision was inapplicable because Petitioner conceded guilt to the charge of felonious possession of a firearm. The OCCA also questioned *Lynn*'s viability in light of *Dawkins v. State*, 252 P.3d 214 (Okla. Crim. App. 2011). Be that as it may, the OCCA's determination that Petitioner conceded guilt to the charge is a reasonable finding of fact. In *Hancock v. Trammell*, 798 F.3d 1002, 1012 (10th Cir. 2015), the Tenth Circuit held

that a petitioner "bears the burden of showing an unreasonable determination of fact," and that this court can "reach the merits of the constitutional claim only if [Petitioner] showed that the OCCA rested its decision on a factually mistaken review of the record." Petitioner has not made this showing.

In addition, the evidence was sufficient to sustain his conviction even absent Petitioner's confession to the crime. The language of 21 O.S.2011, § 1283 shows "[i]t shall be unlawful for any person convicted of any felony in any court of this state . . . to have in his or her possession . . . any pistol, imitation or homemade pistol, altered air or toy pistol, machine gun, sawed-off shotgun or rifle, or any other dangerous or deadly firearm." Here, Petitioner did not challenge any of his prior felony convictions, and the fact that he was in possession of a firearm was affirmed by witnesses. As noted above, the clearly established federal law governing sufficiency of the evidence claims is found in *Jackson*, 443 U.S. at 319 ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). A rational trier of fact would have found that Petitioner, a convicted felon, was in possession of a firearm.

The OCCA's decision was neither contrary to, nor based on an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts. Petitioner's Ground IV is denied.

**Ground V:  Improper joinder**

In Ground V, Petitioner claims Counts One (first degree manslaughter) and Three (unlawful possession of methamphetamine) were improperly joined at Petitioner's trial in violation of his right to a fair trial and due process of law under the Fourteenth Amendment to the United States Constitution. [Doc. 1 at 14]. Petitioner claims the prosecutor joined the two counts in an effort to highjack and sabotage the self-defense claim, noting that "[t]hese two crimes happened a month apart and they are different crimes [and] they do not overlap." [*Id.*]. Petitioner agrees with the OCCA's determination that Counts One and Three were improperly joined. But Petitioner is

convinced that the improper joinder affected the outcome of the proceedings, and that the OCCA's ruling to the contrary "is clearly speculative." [*Id.*].

In response, Respondent contends "Petitioner's claim of improper joinder is not cognizable under federal habeas review" and that "Petitioner has not identified any United States Supreme Court precedent to support his position, and indeed there is none." [Doc. 20 at 31]. Respondent also claims Petitioner's trial "was not fundamentally unfair," and that "this state law issue is not cognizable on habeas review." [*Id.*]. Lastly, Respondent claims the OCCA's determination of the claim was not contrary to, or an unreasonable application, of Supreme Court law, and that the decision was not based on an unreasonable determination of the facts presented at trial. [*Id.*].

The OCCA addressed the claim and denied relief as follows:

In his fifth proposition, Millsap argues that the charges of Manslaughter in the First Degree and Possession of a Controlled Dangerous Substance were improperly joined in the same Information and trial. Multiple offenses may be combined for trial if the crimes could have been joined in the same Information. 22 O.S.2011, § 438. Joinder of offenses in the same Information is permitted when the crimes arise out of the same criminal act or transaction or are part of a series of criminal acts or transactions. *Glass v. State*, 1985 OK CR 65, ¶ 8, 701 P.2d 765, 768. "Criminal acts are properly called a 'series' where the joined counts: (1) refer to the same type of offenses, (2) occurred over a relatively short period of time, (3) in approximately the same location, and (4) proof of each act or transaction overlaps, so as to show a common scheme or plan." *Collins v. State*, 2009 OK CR 32, ¶ 14, 223 P.3d 1014, 1017. However, if it appears that either the State or defendant will be prejudiced by the joinder of offenses in the same trial, the court may order severance. 22 O.S.2011, § 439. To preserve a claim of improper joinder for appellate review, the defendant must object to the manner in which the charge is filed prior to arraignment or file a motion to sever the counts for trial. *Collins*, 2009 OK CR 32, ¶ 12, 223 P.3d at 1017. This Appellant did not do and, thus, he has waived all but plain error. *Id.*

Millsap is correct in his position that the crimes were separate criminal acts which were improperly joined. The Possession of a Controlled Dangerous Substance and Manslaughter in the First Degree occurred in the same location and within a relatively short period of time. *See e.g. Lott v. State*, 2004 OK CR 27, ¶ 35, 98 P.3d 318, 333-34 (upholding joinder of the rape and murder of two different women which were committed four months apart); *Pack v. State*, 1991 OK CR 109, ¶ 8, 819 P.2d 280, 283 (upholding joinder of burglaries committed eight weeks apart). However, they are not the same type of offense and their proof did not overlap so as to show a common scheme or plan. The requirement of "overlapping proof of a

'common scheme or plan' contemplates that there be a relationship or connection between/among the crimes in question, such that proof of one becomes relevant in proving the other/others." *Collins*, 2009 OK CR 32, ¶ 19, 223 P.3d at 1018. This requirement is not analyzed in the same manner as the admissibility of other crimes evidence pursuant to 12 O.S. § 2404(B), but is viewed as a matter of judicial economy to determine whether the proof of the separately charged crimes overlaps to such an extent that it would be a waste of judicial resources to try them separately. *Smith v. State*, 2007 OK CR 16, ¶ 28, 157 P.3d 1155, 1166. With the exception of Millsap's video-taped statement which discussed the circumstances of both crimes, both crimes were proven entirely by separate witnesses and exhibits and bore no logical relationship to each other.

The joinder of the drug and manslaughter charges in the same Information and trial was error. Although erroneous, the error does not rise to the level of plain error as it is clear, beyond a reasonable doubt, that the improper joinder did not affect the outcome of the proceedings. *Barnard*, 2012 OK CR 15, ¶ 15, 290 P.3d at 764. We have recognized that improper joinder of offenses in a single trial may be prejudicial if there is a great disparity in the amount of evidence supporting the joined offenses. *Smith*, 2007 OK CR 16, ¶ 37, 157 P.3d at 1168. This is not one of those cases. There was strong independent evidence supporting each of the convictions and the mere fact that the jury heard evidence of both crimes did not influence them to return a verdict of guilty on both or impact sentencing. Proposition V is denied.

*Millsap*, slip op. at 10-12.

In *Cummings v. Sirmons*, 506 F.3d 1211 (10th Cir. 2007), the Tenth Circuit rejected a similar misjoinder claim:

To obtain federal habeas relief based on his misjoinder claim, Cummings must demonstrate that the OCCA's rejection of the claim was contrary to, or an unreasonable application of, controlling Supreme Court precedent. The controlling Supreme Court case on this issue is *United States v. Lane*, 474 U.S. 438, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986). In *Lane*, the Supreme Court held that "[i]mproper joinder does not, in itself, violate the Constitution." *Id*. at 446 n.8, 106 S. Ct. 725. "Rather," the Court indicated, "misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id*. Echoing *Lane*, we have held that, "to obtain [federal] habeas relief" based on a claim of misjoinder, the "petitioner must show the joinder of offenses actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process." *Lucero v. Kerby*, 133 F.3d 1299, 1314 (10th Cir.1998) (internal quotation marks omitted).

*Cummings*, 506 F.3d at 1239. "Such prejudice may arise when there is a great disparity in the amount of evidence supporting the charges or when the jury is likely to confuse the evidence or infer a criminal disposition on the part of the defendant." *Webber v. Scott*, 390 F.3d 1169, 1178 (10th Cir. 2004). Additionally, in cases when a state court finds that an error is harmless, a federal habeas court must determine if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Petitioner must show the denial of a fundamentally fair trial in order to obtain habeas relief for misjoinder. Petitioner has not made this showing. With the exception of Millsap's videotaped statement which discussed the circumstances of both crimes, each charge was supported by separate witnesses and separate exhibits at trial, meaning the risk of jury confusion was significantly limited, and there is no indication that the jury inferred a criminal disposition on the part of the Petitioner. The jury heard evidence that the methamphetamine was found in a bedroom in Petitioner's home. The bedroom appeared to be the children's bedroom. During the second stage of trial, the jury also heard evidence that Petitioner had two prior drug convictions, one for Possession of CDS in the presence of a child under 12.

Respondent argues that even if a jury had heard nothing concerning the manslaughter charge in a trial on the methamphetamine charge, it still would have found Petitioner guilty and imposed a twenty-year sentence and $10,000 fine. [Doc. 20 at 29]. The argument is well-reasoned, considering the location of the methamphetamine and his prior felony convictions. A similar claim can be made about the manslaughter charge. Even if a jury had heard nothing regarding Petitioner's possession of methamphetamine charge, the jury could have found Petitioner guilty of first degree manslaughter and sentenced him to life in prison, based upon the manner in which Petitioner carried out the crime and his prior felony convictions.

Petitioner has not shown that he was deprived of a fundamentally fair trial. The improper joinder did not have a substantial and injurious effect or influence on the jury's verdict on the counts or impact sentencing. Petitioner has failed to demonstrate that the OCCA's ruling was contrary to, or involved an unreasonable application of, clearly established Supreme Court law, or

was based on an unreasonable determination of the facts in light of the evidence presented at trial. Ground V is denied.

**Ground VI: Petitioner's rights to due process and a fair trial under the Fourteenth Amendment to the United State Constitution were violated by the improper admission of bad character evidence.**

In Ground VI, Petitioner argues his rights to due process and a fair trial were violated by the improper admission of bad character evidence. [Doc. 1 at 15]. Petitioner claims the State introduced irrelevant and prejudicial character evidence at trial without justification in violation of *Michelson v. United States*, 335 U.S. 469, 475-76 (1948), and that plain error occurs when the error deprives a defendant of a fair trial (citing *Chatman v. State*, 716 P.2d 258, 259 (Okla. Crim. App. 1986)). [*Id*.]. Petitioner asserts the prosecutors admitted bad character evidence "so as to overcome Petitioner's affirmative defense of self-defense" and that "they clearly prejudiced the jury against the Petitioner." [*Id*.]. Petitioner specifically claims the State introduced improper and irrelevant allegations of illegal drug use, alleged the illegal possession of a police scanner, and presented a photograph which displayed a Confederate flag. [*Id*.]. Petitioner also claims error in the failure to redact his one-time use of a racial slur from his video-taped interview. [*Id*.]. Petitioner states the OCCA's denial of the claim is clearly erroneous "because plain error did occur." [*Id*.].

Respondent claims Petitioner's Ground VI is not cognizable under federal habeas review. [Doc. 20 at 32]. Directing the court's attention to Okla. Stat. tit. 12, § 2404(B), Respondent explains evidence of other crimes or bad acts may be admissible under Oklahoma law and that "it is not the province of a federal court to reexamine state court determinations on state questions." [*Id*. at 33].

The OCCA analyzed the claim and denied relief as follows:

The admission of evidence lies within the sound discretion of the trial court and, when the issue is properly preserved for appellate review, we will not disturb the

trial court's decision absent an abuse of discretion. *Pavatt v. State*, 2007 OK CR 19, ¶ 42, 159 P.3d 272, 286. Millsap concedes that no objection was lodged to the other crimes and bad acts evidence of which he now complains. Failure to object to the admission of other crimes evidence at the time of its introduction at trial, waives all but plain error. *Wood v. State*, 1998 OK CR 19, ¶ 35, 959 P.2d 1, 10. We find no plain error.

Millsap first challenges the admission of evidence concerning his use of drugs on March 28, 2012, and March 29, 2012. This evidence, however, was part of the *res gestae* of the crime of Manslaughter in the First Degree, as it was part of the entire transaction and central to the chain of events. Although part of the *res gestae* for the crime of Manslaughter in the First Degree, the same is not true in relation to the charge of Possession of a Controlled Dangerous Substance. Evidence of Millsap's drug use on those dates was neither part of the *res gestae* nor relevant to the drug charge which occurred a month earlier and, but for the joinder of the two crimes, would not have been admissible. *Blakely v. State*, 1992 OK CR 70, ¶ 12, 841 P.2d 1156, 1159. Our finding that there was no plain error in Proposition V disposes of this point.

Next Millsap argues that it was error to admit evidence that a police scanner was found in his home when police executed the search warrant. While Millsap is correct that the use of a police scanner in the commission of a crime is proscribed by Section 1214 of Title 21, the reference here to the fact that the scanner was found amounts only to the mere suggestion of another crime. This does not trigger the general rules regarding the admission of other crimes evidence. *Tate v. State*, 1987 OK CR 21, ¶ 5, 732 P.2d 902, 904.

Finally, Millsap contends he was denied a fair trial by the admission of racially charged bad acts evidence. Initially, he contends that it was improper to admit, without redaction, a photograph of the vehicle Millsap loaned to Albin which depicts a confederate flag decal in the rear window. Millsap reluctantly concedes that his mother, Cheryl Millsap, testified that she was the actual owner of the vehicle and had loaned the car to Millsap. Under these circumstances any bad act committed in displaying the image was one apparently done by Cheryl Millsap. He also claims error in the failure to redact his one-time use of the "N" word from his video-taped statement to Detective Batt. We have recognized that a defendant's use of racial slurs may be irrelevant and prejudicial. *Jackson v. State*, 2007 OK CR 24, ¶ 18, 163 P.3d 596, 602; *see also Mitchell v. State*, 2011 OK CR 26, ¶¶ 81-82, 270 P.3d 160, 180. In light of the strength of the State's evidence it is clear beyond a reasonable doubt that any error in failing to redact Millsap's use of the epithet did not affect the outcome of the proceedings. There was no plain error in the admission of other crimes or bad acts and Proposition VI is denied.

*Millsap*, slip op. at 13-15.

As noted herein, in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *McGuire*, 502 U.S. at 67-68. Petitioner's Ground VI contends the admission of certain evidence deprived him of a fair trial, but under Okla. Stat. tit. 12, § 2404(B), evidence of other crimes or bad acts may be admissible under Oklahoma law. Petitioner's claim is not cognizable for federal habeas relief. "Generally speaking, a state court's misapplication of its own evidentiary rules . . . is insufficient to grant habeas relief." *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002).

The admission of the other crimes and bad acts evidence did not render Petitioner's trial fundamentally unfair. Even if this court were to assume that the admission of the racial slur (or any other evidence referenced in Ground VI) was constitutionally erroneous, there is no doubt that the error was harmless. There was strong evidence supporting the guilty verdicts and sentences in the case at hand, regardless of the admission of the other crimes and bad acts evidence. Habeas relief for constitutional error is appropriate only when the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (citations omitted).

Petitioner's trial was not fundamentally unfair, and this court should not disturb a state court's admission of the other crimes and bad acts evidence. The OCCA's determination of this claim was not contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court, and the decision was not based on an unreasonable determination of the facts presented at trial. Habeas corpus relief shall be denied on Petitioner's Ground VI.

**Ground VII: The failure to provide a complete record of the proceedings constitutes a violation of Petitioner's rights under the Fourteenth Amendment to the United States Constitution.**

In Ground VII, Petitioner claims his case should be reversed for a new trial "because he was not provided the full and complete record required to afford him a constitutionally sound and

meaningful appeal." [Doc. 1 at 16]. In support thereof, Petitioner asserts the state "failed to make the necessary redactions" to Petitioner's video-taped statement (recorded on a DVD) and that defense counsel "failed to zealously guard the record by demanding the redactions be made," resulting in the lack of an accurate record that "seriously hindered" appellate review. [*Id.*]. Petitioner's record on appeal included a complete copy of the DVD, without reference to which portions were muted at the time it was presented to the jury, and Petitioner claims the complete copy of the DVD is not a fair and accurate depiction of what the jury heard. In response, Respondent claims Petitioner "has not shown any prejudice" and "only speculates error may have happened," meaning Petitioner "cannot show a due process violation." [Doc. 20 at 38]. Respondent further claims "the OCCA's determination of this claim was not contrary to, or an unreasonable application, of Supreme Court law, and the decision was not based on an unreasonable determination of the facts presented at trial." [*Id.*].

The OCCA denied relief on this claim as follows:

In Proposition VII Millsap challenges the adequacy of the record on appeal. In his video-taped statement to police, references were made to Millsap being held on the charge of felonious possession of a firearm. In addition, when explaining the circumstances surrounding the shooting, Millsap stated that he hid the shotgun because he was a convicted felon and knew it was unlawful to have it in his possession. The parties and the trial court agreed that this information should not be presented to the jury. Rather than redact the video, the State, without objection from the defense, played the video muting those portions which all agreed were inadmissible. On appeal, the record consists of the unredacted video with no further information to indicate precisely which portions were muted from the hearing of the jury. On appeal, Millsap argues he has been denied his right to a meaningful appeal because appellate counsel and this Court cannot know exactly what information was excluded from the evidence.

It is the burden of defense counsel to ensure that the record on appeal is sufficient. *Anderson v. State*, 1985 OK CR 94, ¶ 4, 704 P.2d 499, 501. While Millsap speculates that there might have been error that is not properly preserved, we cannot presume error from a silent record. *Welch v. State*, 1998 OK CR 54, ¶ 41, 968 P.2d 1231, 1245. Here the trial court evinced concern for the possibility of a mistrial should improper evidence be admitted and defense counsel did not object during or after the playing of the video. Certainly the better practice would have been to redact the video to not only remove any inadmissible content but to remove any doubt in the record on appeal as to what evidence was presented to the jury. Nevertheless, the presumption of regularity in court proceedings and the

presumption of competence of counsel operate to suggest that there was no error at all. *Huntley v. State*, 1988 OK CR 28, ¶¶ 8-9, 750 P.2d 1134, 1136 (invoking presumptions of regularity in court proceedings and competence of counsel to find that trial counsel's failure to request that closing arguments be transcribed may have reflected poor judgment but did not entitle the defendant to a new trial based on allegations of prosecutorial misconduct during closing arguments). Millsap's claim that he has been denied an adequate appeal in the absence of a more complete record is not only speculative but is belied by his own ability to thoroughly raise eleven propositions of error on appeal. Proposition VII is denied.

*Millsap*, slip op. at 15-16.

The Supreme Court has held that an indigent criminal appellant is entitled to a "record of sufficient completeness to permit proper consideration of their claims." *Draper v. Washington*, 372 U.S. 487, 499 (1963). In *Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971), the Court clarified that "[a] record of sufficient completeness does not translate automatically into a complete verbatim transcript."

Here, the OCCA considered an adequate record on appeal, and Petitioner has not provided this court with any evidence that his direct appeal to the OCCA was prejudiced in the absence of a more complete record. Instead, Petitioner speculates that the lack of an accurate record seriously hindered his appeal. Petitioner's Ground VII is insufficient to raise a due process claim.

A similar claim was rejected by a Tenth Circuit panel in *Harden v. Maxwell*, No. 00-7032, 2000 WL 1208320 (10th Cir. Aug. 25, 2000) (unpublished).[2] Citing *Draper*, the panel explained that "mere speculation as to possible error is insufficient to raise any indication of prejudice, particularly given the fact that prisoners do not have a constitutional right to a complete copy of the trial record on appeal." *Harden* at *2. The panel denied a certificate of appealability and dismissed the appeal. *Id.*

The OCCA's determination of this claim was not contrary to, or an unreasonable application, of Supreme Court law, and the decision was not based on an unreasonable determination of the facts presented at trial. Petitioner's Ground VII is denied.

---

[2]     This court is aware that "[u]npublished decisions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(A).

**Ground VIII:   The trial court abused its discretion in allowing the state to allege and to present evidence of separate prior convictions on cases and counts that arose out of the same transactions, or occurrence or series of events closely related in time and location.**

In Ground VIII, Petitioner claims certain evidence presented to the jury during the second stage of his trial was in violation of Okla. Stat. tit. 21, §§ 51.1(B) and (C).  [Doc. 1 at 17].  More specifically, Petitioner contends that "felony offenses relied upon for enhancement shall not have arisen out of the same transaction or occurrence or series of events closely related in time and location," and that the trial court abused its discretion by allowing the state to present evidence of prior felony convictions "that were not valid for enhancement."  [*Id*.].  Petitioner complains that the jury was told that he had seven prior felony convictions and that it "should drop the hammer on him," when in fact (according to Petitioner) he only had three prior felony convictions.  [*Id*.].  Petitioner argues that the OCCA's ruling on the claim and failure to follow Oklahoma law violated due process and equal protection of the law required by the 14th Amendment.  [*Id*.].

Respondent contends Ground VIII must be denied by the court, arguing "there is no Supreme Court law to support his claim."  [Doc. 20 at 39].  Respondent claims the enhancement procedure complained about by Petitioner is a matter of state law, and that questions of state law are not cognizable issues in a federal habeas court.  [*Id*. at 40].  Respondent further claims Petitioner cannot show he was deprived of a fundamentally fair trial nor due process of law, noting that Petitioner's sentencing range would be the exact same even if enhanced by three felonies.  [*Id*. at 42].

The OCCA rejected Petitioner's claim on direct appeal:

Next Millsap argues that his sentences were improperly enhanced with prior convictions that arose out of the same transaction.  At trial the State offered into evidence Judgments and Sentences establishing that Millsap had seven prior felony convictions; one for Possession of a Firearm while on Supervised Probation, four for Burglary in the Second Degree, one for Possession of a Controlled Dangerous Substance in the Presence of a Child and one for Possession of a Controlled Dangerous Substance with Intent to Distribute.  He concedes that he neither objected to the admission of each of these prior convictions nor made a record of

26

their underlying facts, thus waiving all but plain error. *Cooper v. State*, 1991 OK CR 26, ¶ 13, 806 P.2d 1136, 1139.

The second page of an Information is merely an allegation that a defendant has one or more prior convictions. *Bumpus v. State*, 1996 OK CR 52, ¶ 9, 925 P.2d 1208, 1210. At trial, the State has the burden of proving the fact of the prior convictions and that the defendant is the same individual so convicted. *Cooper v. State*, 1991 OK CR 54, ¶ 7, 810 P.2d 1303, 1306. If any defects not appearing on the face of the prior Judgment and Sentence warrant exclusion of the same for enhancement purposes, a defendant bears the burden of demonstrating their existence. *Larson v. State*, 1985 OK CR 53, ¶ 7, 700 P.2d 220, 222. This is true of any claim that the prior convictions arose out of the same transaction or series of events closely related in time and location as well. *Cobb v. State*, 1989 OK CR 8, ¶ 3, 773 P.2d 371, 371.

While a defendant bears the burden of demonstrating that prior convictions arose out of the same transaction or series of events, the fact that prior convictions have consecutively numbered case numbers or were obtained on the same date is not sufficient to demonstrate that the same arose out of the same transaction. *Johnson v. State*, 1988 OK CR 242, ¶ 12, 764 P.2d 197, 201; *Mornes v. State*, 1988 OK CR 78, ¶ 13, 755 P.2d 91, 95. Yet this is all Millsap has offered in support of his position. Appellant has failed to show that his prior felony convictions arose out of a single transaction and, thus, there was no plain error in the admission of each of these prior convictions. Proposition VIII is denied.

*Millsap*, slip op. at 16-17.

The Tenth Circuit has explained that Oklahoma's "enhancement procedure is a matter of state law." *Johnson v. Cowley*, 40 F.3d 341, 345 (10th Cir. 1994). Furthermore, a similar claim under Okla. Stat. tit. 21, §§ 51.1(B) was rejected by a Tenth Circuit panel in *Haney v. Addison*, No. 07-6269, 275 Fed.Appx. 802 (10th Cir. Apr. 30, 2008) (unpublished). The petitioner in *Haney* argued that his prior offenses arose out of a series of events closely related in time. *Haney*, 275 Fed.Appx. at 806. The Tenth Circuit noted that "[t]he OCCA rejected this argument, finding five valid prior convictions, each constituting a separate occurrence or transaction," but also explained "[t]his finding was a matter of state law, so even if there had been an error, relief would not be available under § 2254." *Id.*

In this case, the OCCA found there was no plain error in the admission of each of Petitioner's prior convictions. The OCCA's finding was a matter of state law and relief is not available under § 2254. Petitioner was not deprived of a fair trial nor due process. Petitioner's

sentences (whether enhanced by three or seven prior felony convictions) are within the statutory range prescribed by the statutes. This ground for relief is meritless.

**Ground IX: Ineffective Assistance of Counsel**

Petitioner next claims he was denied the effective assistance of trial counsel. [Doc. 1 at 18-20]. The ineffectiveness of counsel claims parallel most of the discussion found in Grounds I, IV, V, VI, VII, and VIII above. Respondent alleges the OCCA's decision denying this claim was consistent with Supreme Court law and was not an unreasonable determination of the facts.

In a thorough discussion, the OCCA found no merit in Petitioner's claim of ineffective assistance of counsel:

> Recognizing that his allegations of error as presented in Propositions I, V, VI, VII and VIII were not properly preserved for appellate review, Millsap argues he received ineffective assistance of trial counsel predicated on counsel's failure to properly preserve these issues. Claims of ineffective assistance of counsel are reviewed under the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Malone v. State*, 2013 OK CR 1, ¶ 14, 293 P.3d 198, 206. "An analysis of an ineffective assistance of counsel claim begins with the presumption that trial counsel was competent to provide the guiding hand that the accused needed, and therefore the burden is on the accused to demonstrate both deficient performance and the resulting prejudice." *Wiley v. State*, 2008 OK CR 30, ¶ 4, 199 P.3d 877, 878.
>
> To establish constitutionally deficient performance by counsel, the appellant must show that counsel's representation was objectively unreasonable under prevailing professional norms. *Id.* at ¶ 5, 199 P.3d at 879. "[T]he issue is whether counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney in light of his overall performance." *Malone*, 2013 OK CR 1, ¶ 15, 293 P.3d at 206. In addition, appellant bears the burden to establish prejudice resulting from the errors of counsel. To do so, he must show there exists a reasonable probability that, but for the errors of counsel, the result of the trial court proceedings would have been different. *Wiley*, 2008 OK CR 30, ¶ 5, 199 P.3d at 879. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*
>
> In part, Millsap contends that counsel was ineffective in failing to: (1) request that the jury be instructed pursuant to the Stand Your Ground statute in 21 O.S.2011, § 1289.25 as a theory of defense; (2) move to sever the charges in Counts I and III

on the grounds that they were improperly joined; (3) object to the improper enhancement of Millsap's sentence with prior convictions arising out of the same transaction; (4) object to the admission of other crimes or bad acts evidence; and (5) properly preserve the record for appeal by demanding redaction of the video-taped statement. Considering each of the underlying substantive claims in Propositions I, V, VI, and VIII we found no plain error. In addressing Proposition VII we further concluded that Millsap's contention that counsel's failure to demand redaction of the video did not deny him a meaningful appeal. It must follow, therefore, that Millsap cannot meet his burden of establishing that the results of the proceedings would have been different but for these alleged errors of counsel. *Young v. State*, 2008 OK CR 25, ¶ 36, 191 P.3d 601, 610-11 (finding that appellant could not satisfy his burden of establishing resulting prejudice under *Strickland* where the underlying substantive claim is reviewed for plain error and none found to exist); *see also Eizember*, 2007 OK CR 29, ¶ 153, 164 P.3d at 244.

Appellant also faults counsel for failing to assert justification as a theory of defense to the charge of Possession of a Firearm After Former Conviction of a Felony. The theory of defense to be presented at trial is a matter of strategy which we will not second guess on appeal. *Short v. State*, 1999 OK CR 15, ¶ 87, 980 P.2d 1081, 1107. In the present case, defense counsel presented a theory of self-defense to the charge of Manslaughter in the First Degree in the first stage of the trial proceedings. When the jury returned with a verdict of guilty, counsel did not pursue a theory that his need to protect himself also justified his possession of the shotgun. Instead, counsel conceded guilt on this charge and appealed for mercy from the jury in sentencing. Conceding guilt to maintain credibility with the jury and pleading for leniency is a reasonable trial strategy. *Sanchez v. State*, 2009 OK CR 31, ¶ 99, 223 P.3d 980, 1012. Millsap has failed to overcome the presumption of competence and show that counsel's performance in this respect was so unprofessional as to deprive him of a fair trial. Having failed to meet his burden of demonstrating objectively unreasonable performance or resulting prejudice on each of his challenges to efficacy of trial counsel, Proposition IX is denied.

*Millsap*, slip op. at 18-20.

"There is a strong presumption that counsel provided effective assistance of counsel, and petitioner has the burden of proof to overcome that presumption." *United States v. Rantz*, 862 F.2d 808, 810 (10th Cir. 1988) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)), *cert. denied*, 489 U.S. 1089 (1989). To prevail on his claim of ineffective assistance of counsel, the defendant must prove deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, the defendant must overcome the strong presumption that counsel's conduct fell within the wide range of professional conduct, including trial strategy. *Id*. at 689. To

prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Of particular importance herein, the Supreme Court has also provided guidance regarding the application of *Strickland* in habeas corpus proceedings:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (emphasis in original).

> Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted).

Petitioner's first claim of ineffective assistance of counsel is based upon his claim in Ground I. Petitioner argues counsel was ineffective for failing to argue that Petitioner had immunity from prosecution under the Stand Your Ground statute in 21 O.S.2011, § 1289.25, and that he was ineffective for failing to request that the jury be instructed pursuant to the Stand Your Ground statute as a theory of defense. [Doc. 1 at 18-19]. Under this provision, however, a person is justified in using deadly force to defend against the unlawful and forcible entry into a home or business by another. The evidence showed Mr. Albin was invited to enter Petitioner's home, and that Mr. Albin was not unlawfully and forcibly entering Petitioner's home at the time he was shot.

As discussed in Ground I above, the failure to assert this argument and the lack of the instruction did not deprive Petitioner of a fair trial and due process. Defense counsel is not ineffective for failing to raise an issue that is meritless. *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (holding that counsel was not ineffective for failing to assert a meritless argument at trial); *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (observing that "if the issue is meritless, its omission will not constitute deficient performance."). Furthermore, Petitioner has shown no prejudice resulting from the failure to assert this argument or the absence of the jury instruction.

Petitioner's next claim of ineffective assistance of counsel is based upon his claim in Ground IV. Petitioner argues counsel was ineffective at the second stage of trial for failing to argue Petitioner was justified in possessing a firearm. [Doc. 1 at 19]. The OCCA was not persuaded and opined that "[c]onceding guilt to maintain credibility with the jury and pleading for leniency is a reasonable trial strategy." *Millsap*, slip op. at 20. This court agrees. Given the evidence presented at trial, and the jury's rejection of self-defense, it was reasonable for counsel to seek mercy rather than argue justification for Petitioner's possession of the firearm. Counsel was not deficient under *Strickland*.

Petitioner also claims counsel was ineffective for failure to argue Counts One and Three were improperly joined. Without expressing an opinion on whether counsel's performance was deficient, the court may find it "easier to dispose of an ineffectiveness claim for lack of prejudice than to determine whether the alleged errors were legally deficient." *Davis v. Executive Director of Dep't of Corrections*, 100 F.3d 750, 760 (10th Cir. 1996), *cert. denied*, 520 U.S. 1215 (1997)

(quoting *United States v. Haddock*, 12 F.3d 950, 955 (10th Cir. 1993)). After careful review, the court finds that even if trial counsel had requested a severance of Counts One and Three, the outcome would not have been different. *See* Ground V. Therefore, petitioner's trial counsel was not ineffective, and the OCCA's decision on this issue was consistent with federal law.

Petitioner also alleges ineffective assistance of counsel for failure to object to the admission of "improper and prejudicial character evidence as discussed in Proposition VI." [Doc. 1 at 20]. As described above, however, there was strong evidence supporting the guilty verdicts and sentences in the case at hand, regardless of the admission of the other crimes and bad acts evidence. The failure to object to the evidence did not prejudice the defense of the case.

Petitioner further claims his attorney was ineffective for failing to redact the DVD and ensure a complete record of the proceedings. [Doc. 1 at 20]. As explained in Ground VII above, the State manually muted the DVD video at appropriate times to exclude certain improper evidence from the hearing of the jury. The OCCA concluded Petitioner was not denied an adequate appeal in the absence of a more complete record, but the OCCA opined that "the better practice would have been to redact the video to not only remove any inadmissible content but to remove any doubt in the record on appeal as to what evidence was presented to the jury." *Millsap*, slip op. at 16. Once again, this court agrees. Nevertheless, the failure to redact the video does not mean counsel was ineffective. *See Richter*, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.") (quoting *Strickland*, 466 U.S. at 690). The OCCA considered an adequate record on appeal, and Petitioner has not provided this court with any evidence that his direct appeal to the OCCA was prejudiced in the absence of a more complete record. Moreover, counsel's acquiescence in allowing the State to manually mute the DVD at appropriate times during its presentation did not prejudice the defense of the case. *See Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."); *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) ("[M]ere speculation is not sufficient" to satisfy a petitioner's burden on habeas corpus review). Counsel was not ineffective.

Lastly, counsel was not ineffective for failure to object to the transactional priors. *See* Ground VIII. Any objection by his trial counsel on this issue would have been properly overruled or would have had no effect on the outcome of the trial. As noted by the OCCA, there is no indication in the record that defense counsel had any reasonable basis for disputing the State's evidence of Petitioner's prior felony convictions. The State argued Petitioner had seven prior felonies. Petitioner argues he only had three. Either way, the sentences would be the same. The demands of *Strickland* are not satisfied by the "bald assertion that had the jury not known about some of his prior convictions, it would have given him a lighter sentence." *Byrd v. Workman*, 645 F.3d 1159, 1174 (10th Cir. 2011). The failure to object to the transactional priors did not prejudice the defense of the case. Under these circumstances, Petitioner cannot show counsel's strategy was improper or constituted ineffective assistance of counsel.

After careful review, the court finds the OCCA's determination of Petitioner's ineffective assistance of counsel claim was not based on an unreasonable determination of the facts, and the decision was not contrary to, or an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Ground IX is denied.

**Ground X: Excessive Sentence**

Although Petitioner admits his sentences are "technically within the statutory range," he nonetheless argues in Ground X that his sentences are excessive and should be modified. [Doc. 1 at 21]. Petitioner claims his sentences should "shock the conscience" of the court, and that the sentences "violate the cruel and unusual standard of the 8th Amendment of the U.S. Constitution." [*Id.*]. Respondent disagrees, contending Ground X is not cognizable under federal habeas review because Petitioner's sentences are within the range prescribed by statute. In support thereof, Respondent provides the following information:

> The sentencing ranges for Petitioner's convictions were: manslaughter after two or more prior felony convictions - twenty (20) years to life imprisonment, possession of CDS after one or more prior felony conviction - four (4) years to twenty (20) years, and possession of a firearm after former conviction of two or more felonies - three (3) year to life imprisonment. *See* Okla. Stat. tit. 21, §§ 711, 715 (2011);

Okla. Stat. tit. 21, §§ 1283-1284 (2011), Okla. Stat. tit. 21, §§ 51.1(B), (C); Okla. Stat. tit. 63, § 2-402(B)(1).

[Doc. 20 at 53].

The OCCA denied relief on Petitioner's claim as follows:

> In Proposition X Millsap argues that each of his sentences is excessive. This Court has held that it will not modify a sentence imposed by a jury that is within the statutory range of punishment unless, under all of the facts and circumstances, the sentence imposed is so excessive as to shock the conscience of the Court. *Watts v. State*, 2008 OK CR 27, ¶ 10, 194 P.3d 133, 137. In light of his extensive criminal history and under the facts presented, Millsap's sentences do not shock the conscience. Proposition X is denied.

*Millsap*, slip op. at 20.

In *Dennis v. Poppel*, 222 F.3d 1245 (10th Cir. 2000), *cert. denied*, 534 U.S. 887 (2001), the Tenth Circuit Court of Appeals provided the following guidance:

> We afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law. *See Haynes v. Butler*, 825 F.2d 921, 923–24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988); *see also Handley v. Page*, 398 F.2d 351, 352 (10th Cir. 1968). Generally, our review of a sentence ends once we determine the sentence is within the limitation set by statute. *See Vasquez v. Cooper*, 862 F.2d 250, 255 (10th Cir. 1988).

*Dennis*, 222 F.3d at 1258. Here, Petitioner's sentences were clearly within the statutory range of permissible punishment under Oklahoma law.

As for Petitioner's claim that his sentences violate the federal constitutional prohibition against cruel and unusual punishment:

> "The Eighth Amendment contains a narrow proportionality principle that applies to noncapital sentences." *United States v. Angelos*, 433 F.3d 738, 750 (10th Cir. 2006) (quotation marks and alterations omitted) (citing *Ewing v. California*, 538 U.S. 11, 20 (2003)). Under this narrow principle, the Constitution does not require the crime and the sentence to be strictly proportional. *Id.* Instead, "it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing*, 538 U.S. at 20 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and

unusual under the Eighth Amendment. *See United States v. Hughes*, 901 F.2d 830, 832 (10th Cir. 1990).

*United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir. 2006), *cert. denied*, 549 U.S. 1063 (2006). In the case at hand, Petitioner's sentences are not grossly disproportionate to the crimes. Petitioner's sentences do not violate the federal Constitution.

After careful consideration of the circumstances of this case, this court finds the OCCA's decision of this claim was not contrary to, or an unreasonable application of, Supreme Court law. Therefore, this claim is denied.

**Ground XI: Cumulative Error**

In his final claim, Petitioner alleges the accumulation of errors deprived him of a fair trial. [Doc. 1 at 21]. The OCCA found no merit in this claim:

> In his final assignment of error, Millsap argues that the cumulative effect of the errors raised on appeal deprived him of a fair trial. Where this Court has reviewed each of the individual allegations of errors raised on direct appeal and found none to warrant relief, a cumulative error argument has no merit. *Mathis v. State*, 2012 OK CR 1, ¶ 33, 271 P.3d 67, 78-79. There being no error individually, Proposition XI is denied.

*Millsap*, slip op. at 20.

The Tenth Circuit defers to the OCCA's cumulative error determination "unless [the ruling] constitutes an unreasonable application of the cumulative-error doctrine." *Thornburg v. Mullin*, 422 F.3d 1113, 1137 (10th Cir. 2005); *Simpson v. Carpenter*, 912 F.3d 542, 603 (10th Cir. 2018). The OCCA reviewed the individual allegations of errors raised on direct appeal and found none warranted relief, and under the circumstances, the OCCA's cumulative error analysis is not unreasonable. The Tenth Circuit has explained that "[i]n the federal habeas context, cumulative-error analysis 'aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless,' an analysis we undertake only if there are at least two errors."

*Fairchild v. Trammell*, 784 F.3d 702, 724 (10th Cir. 2015) (quoting *Lott v. Trammell*, 705 F.3d 1167, 1223 (10th Cir. 2013)).

The court finds there were no constitutional errors to aggregate in this action, meaning there is no basis for a cumulative error analysis. Petitioner has failed to show that the OCCA's ruling on this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. This ground for relief must be denied.


**Certificate of Appealability**

The court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, he has not "demonstrate[d] that reasonable jurists would find [this] court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate of appealability shall be denied.

ACCORDINGLY, Petitioner's petition for a writ of habeas corpus [Doc. 1] is DENIED, and a certificate of appealability is DENIED.

It is so ordered this 21st day of March, 2019.

*Ronald A. White*

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA